UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DORA ALVAREZ RODRIGUEZ,

       Plaintiff,

v.                                                 Case No.  8:21-cv-681-T-SPF

KILOLO KIJAKAZI,
Commissioner of the Social
Security Administration,[1]

       Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). For the reasons explained below, the Commissioner's decision is affirmed.

**I.    Procedural Background**

Plaintiff filed applications for a period of disability, DIB, and SSI (Tr. 244–58). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 101–83). Plaintiff then requested an administrative hearing (Tr. 179–81). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 70–100, 868–97). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled, and accordingly denied Plaintiff's claims for benefits (Tr. 49–68). Subsequently,

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, and is substituted as Defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

Plaintiff requested review from the Appeals Council (Tr. 346–51). The Appeals Council affirmed the ALJ's decision (Tr. 1–9). Plaintiff then filed a complaint with the United States District Court for the Middle District of Florida, which reversed the decision of the Commissioner and remanded the case for further proceedings (Tr. 850–59). On remand, an ALJ held a hearing (Tr. 632–47). The ALJ issued an unfavorable decision, finding the Plaintiff not disabled (Tr. 606–30). Plaintiff then filed exceptions to the Appeals Council, which affirmed the ALJ's decision (Tr. 598–605). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.     Factual Background and the ALJ's Decision

Plaintiff, who was born in 1967 (Tr. 271), claimed disability beginning September 1, 2010 (Tr. 271). Plaintiff has a ninth-grade education (Tr. 297) and past relevant work as a fruit packager and a fruit picker (Tr. 621–22). Plaintiff alleged disability due to a protrusion of her L5-S1 spine disc (Tr. 296).

In rendering the administrative decision, the ALJ concluded that Plaintiff last met the insured status requirements on September 30, 2010 and had not engaged in substantial gainful activity since September 1, 2010, the alleged onset date (Tr. 615). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: back disorder and meniscus degeneration of the left knee (Tr. 615). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 30). The ALJ

then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R.§§ 404.1567(b) and 416.967(b), with these limitations:

> [Plaintiff] can lift and carry 20 pounds occasionally; can lift and carry 10 pounds frequently; can stand and walk for approximately 6 hours per 8-hour workday; can sit for approximately 6 hours per 8-hour workday, with normal breaks; can climb ramps and stairs occasionally; can climb ladders, ropes, or scaffolds occasionally; can balance, stoop, kneel, crouch and crawl occasionally; limited to jobs that require only basic English speaking and writing.

(Tr. 617). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 620).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could not perform her past relevant work as a fruit packager and fruit picker but could work as a cafeteria worker, garment sorter, or laundry folder (Tr. 621-623). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (*Id.*).

### III. Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve

months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal

4

standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**IV. Analysis**

Plaintiff advances one argument: the ALJ erred in failing to find that she was "illiterate in English" and therefore disabled under the Medical-Vocational Guidelines (Doc. 22 at 7). According to Plaintiff, the ALJ should have found her disabled under Medical-Vocational Guideline 202.09, because she is closely approaching advanced age,

5

is "illiterate in English," and her past work history is limited to unskilled work.[2] The Commissioner disagrees, contending the ALJ properly evaluated Plaintiff's English ability (*Id*. at 10).

As discussed above, at step five, the burden shifts to the Commissioner to prove the claimant can perform other work in the national economy, considering her RFC, age, education, and past work experience. *See* 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4). If the claimant can perform other work, she is considered not disabled. The ALJ must develop a full and fair record regarding jobs available to the claimant, *see Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995), and there are two ways to do this. The first is by applying the Medical-Vocational Guidelines, Title 20, Code of Federal Regulations, Part 404, Subpart P, Appendix 2 (the Grids). The Grids are data tables that, when applicable, compel a conclusion regarding a claimant's ability to perform other work (and, consequently, whether the claimant is disabled). The second way to develop the vocational record is to consult a VE. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Walker v. Bowen*, 826 F.2d 996 (11th Cir. 1987).

"[T]he regulations regarding the implementation of the grids caution that they are only applicable under certain conditions." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). For example, "[e]xclusive reliance on the grids is appropriate in cases involving only exertional impairments (impairments which place limits on an individual's ability to

---

[2] As explained more below, illiteracy and the ability to communicate in English are separate and distinct concepts. Illiteracy refers to the ability to read and write, whereas the ability to communicate in English refers to the ability to speak, read, and understand English. While the SSA previously construed "illiteracy" to mean "illiteracy in English," this is no longer the case.

meet job strength requirements).""  *Id.*; *see also* 20 C.F.R. § 404.1569a(b) ("When your impairment(s) and related symptoms only impose exertional limitations and your specific vocational profile is listed in a rule contained in appendix 2 of this subpart, we will directly apply that rule to determine whether you are disabled.").  On the other hand, when a claimant's impairments and related symptoms only affect a claimant's ability to perform the nonexertional aspects of work, "the rules in appendix 2 do not direct factual conclusions of disabled or not disabled." 20 C.F.R. § 404.1569a(c)(2).  Where a claimant's impairments result in both exertional and nonexertional limitations, the SSA "will not directly apply the rules in appendix 2 unless there is a rule that directs a conclusion that you are disabled based upon your strength limitations." 20 C.F.R. § 404.1569a(d).

      Here, Plaintiff's RFC includes both exertional and nonexertional limitations. *See* 20 C.F.R. § 404.1569a.  Accordingly, the ALJ was required to apply the grids only if there is a rule that directs the conclusion that Plaintiff is disabled based upon her strength limitations.  Plaintiff contends rule 202.09 is such a rule.  At the time of the ALJ's decision, rule 202.09 stated that if a claimant limited to light work is (1) "closely approaching advanced age," (2) is either illiterate or unable to communicate in English, and (3) has past relevant work experience at the unskilled level, then a finding of disabled is warranted.  It is undisputed that Plaintiff was an individual closely approaching advanced age and her past relevant work was at the unskilled level.  Accordingly, the only issue is whether the ALJ's findings regarding Plaintiff's literacy and ability to communicate in English are supported by substantial evidence.

7

The SSA considers a claimant's level of education in assessing a claimant's ability to meet vocational requirements. *See* 20 C.F.R. §§ 404.1564(a), 416.964(a). In evaluating a claimant's educational level, the SSA used the following categories at the time of the ALJ's decision:

> (1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.
>
> (2) Marginal education. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.
>
> (3) Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.
>
> (4) High school education and above. High school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above. We generally consider that someone with these educational abilities can do semi-skilled through skilled work.
>
> (5) Inability to communicate in English. Since the ability to speak, read and understand English is generally learned or increased at school, we may consider this an educational factor. Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language. Therefore, we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do. It generally doesn't matter what other language a person may be fluent in.

20 C.F.R. §§ 404.1564(b), 416.964(b) (effective until April 27, 2020). The SSA also acknowledges that the numerical grade level a claimant completed may not represent his or her actual educational abilities, but "if there is no evidence to contradict it, [the agency] will use your numerical grade level to determine your educational abilities." *Id.*

Here, the ALJ found—without any elaboration—that Plaintiff has a limited education and is able to communicate in English (Tr. 622). But substantial evidence supports the finding that Plaintiff has a limited education. Plaintiff attended school in Mexico through the ninth grade but did not earn the equivalent of a high school diploma (Tr. 75). *See* 20 C.F.R. §§ 404.1564(b), 416.964(b) ("However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities."); 20 C.F.R. §§ 404.1564(b)(1), 416.964(b)(1) ("We generally consider that a 7th grade through 11th grade level of formal education is a limited education."); SSR 20-1p, 2020 WL 1083309 (Mar. 9, 2020) ("[W]e will not consider whether an individual attained his or her education in another country . . . ."). Plaintiff acknowledged that she could read (Tr. 617).

Substantial evidence also supports the finding that Plaintiff can communicate in English. Plaintiff indicated in her benefits application that she could read and understand English and could write more than her name in English (Tr. 296); *see Hood v. Astrue*, No. 5:09-cv-79-Oc-GRJ, 2010 WL 1223885, at *6 (M.D. Fla. Mar. 24, 2010) (finding ALJ was fully entitled to rely on the fact that Plaintiff expressly acknowledged in her benefits application that she is "capable of understanding, speaking, reading, and writing English without the assistance of an interpreter"). She also was able to pass a written driver's test

9

in English (Tr. 76–77). At the second hearing in front of the ALJ, Plaintiff indicated that she knows "basic words" such as "paper" (Tr. 638). When asked if she could ask a cashier for a cup of coffee, Plaintiff stated that she "will try to follow the words to ask" (Tr. 638). When asked if she could translate written English words from a piece of paper, Plaintiff responded, "I could translate whatever words on there that I understand" (Tr. 638). Interestingly, the disability report completed by the field office indicated that Plaintiff "spoke English well" and that "no translator was needed" during a face-to-face interview with Plaintiff (Tr. 271–72).

Even if the ALJ erred in failing to *explain* his finding that Plaintiff has a limited education and can speak basic English, the error is harmless. Namely, if the Court were to remand on that basis, there would be no remedy because the SSA no longer considers the ability to communicate in English as a vocational factor. Indeed, while the regulations applicable at the time of the ALJ's decision required the ALJ to consider a claimant's ability to communicate in English as an aspect of the vocational factor of education, the revised regulations, effective April 27, 2020 (after the ALJ's decision), do not.[3] *See* 20 C.F.R. §§ 404.1564, 416.964. In revising these regulations, the SSA emphasized the "inability to communicate in English" was "no longer a useful indicator of an individual's

---

[3] As a result, Plaintiff requests that the Court "find that Plaintiff was illiterate and unable to communicate in English, as that term is defined in the regulations, reverse the decision of the Commissioner, and direct a finding of disability" (Doc. 22 at 10). The Court declines this request. The Court cannot re-weigh the evidence or make findings of fact. That is the province of the ALJ. *Bloodsworth*, 703 F.2d at 1239; *see also McDaniel v. Bowen*, 800 F.2d 1026, 1032 (11th Cir. 1986) (stating that it would be "an affront to the administrative process if courts were to engage in direct fact finding in these Social Security disability cases").

educational attainment or of the vocational impact of an individual's education because of changes in the national workforce since [the SSA] adopted the [ ] rule 40 years ago." 85 Fed. Reg. 10586-01, n.95 (SSA, Feb. 25, 2020), 2020 WL 885690 ("Removing Inability to Communicate in English as an Education Category"). And the SSA "will apply the final rule to new applications filed on or after the effective date, **and to claims that are pending on and after the effective date**." *Id.* at n.95 (emphasis added). Under the revised regulation, the SSA "will not consider whether an individual attained his or her education in another country or whether the individual lacks English proficiency." SSR 20-1p, 2020 WL 1083309 (Mar. 9, 2020) ("Most individuals learn to read and write at least a simple message by the time they complete fourth grade, regardless of whether the schooling occurred in the United States or in another country"); *see id.* ("We will assign an individual to the illiteracy category only if the individual is unable to read or write a simple message in any language.").[4]

Importantly, the Court does not find that the ALJ erred in *concluding* that Plaintiff has a limited education and can communicate in English. The ALJ's findings are supported by substantial evidence. To the extent the ALJ erred in failing to explain his conclusion, the error is harmless because the regulations no longer consider the ability to communicate in English as a vocational factor. "If 'remand would be an idle and useless formality,' a reviewing court is not required to 'convert judicial review of agency action into a ping-pong game.'" *Thomas v. Comm'r of Soc. Sec.*, No. 3:18-cv-679-J-34PDB, 2019

---

[4] The Court notes that the VE testified that Plaintiff could perform the jobs she identified even if Plaintiff could not speak English (Tr. 646).

11

WL 4279906, at *6 n.12 (M.D. Fla. Aug. 5, 2019) (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969)), *report and recommendation adopted*, 2019 WL 4278768 (Sept. 10, 2019); see also *Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) ("When . . . an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.") (citations omitted). Accordingly, the decision of the Commissioner is due to be affirmed.

### V. Conclusion

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is affirmed.

2. The Clerk is directed to enter final judgment in favor of the Defendant and close the case.

**ORDERED** in Tampa, Florida, on this 15th day of June 2022.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE